**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EDSON VICENTE,**                                              Chapter 7
   Debtor                                        Case No. 10-18450-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is "FCDB SNPWL Trust's Motion for Relief from the Automatic Stay or *in the Alternative* Adequate Protection" through which it sought relief from stay to foreclose property located at 16 Cannell Place, Everett, Massachusetts (the "Property"). Edson Vicente (the "Debtor") filed an Objection to the Motion. The Court originally heard the Motion filed by FCDB SNPWL Trust (the "Trust") and the Debtor's Objection on November 3, 2010. Following the conversion of the Debtor's case to a case under Chapter 7, the Court conducted a status conference on February 9, 2011. The Court, with the parties' agreement, directed the parties to file a Joint Stipulation of Facts by February 18, 2011. The issues presented are whether the Trust has standing to seek relief

from the automatic stay and whether it has satisfied its burden of establishing grounds for relief from stay under 11 U.S.C. § 362(d).[1]

## II. PROCEDURAL BACKGROUND

The Debtor filed a Chapter 13 petition on August 4, 2010. On August 19, 2010, he filed Schedule A-Real Property, listing the Property with a value of $215,287, subject to secured claims of $540,000. On Schedule C-Property Claimed as Exempt, the Debtor claimed the Property as exempt pursuant to 11 U.S.C. § 522(d)(1).

In September of 2010, the Chapter 13 Trustee moved to dismiss the Debtor's Chapter 13 case because he failed to appear at the meeting of creditors and failed to make his first Chapter 13 plan payment. In response, the Debtor moved to convert his Chapter 13 case to a case under Chapter 11 on grounds that his unsecured debt exceeded the limits imposed

---

[1] Section 362(d) provides in relevant part the following:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

by 11 U.S.C. § 109(e).[2] The Court granted the Debtor's motion on September 30, 2010.

On October 27, 2010, the Trust moved for relief from the automatic stay to which the Debtor filed a timely objection. The Court heard the Motion and the Debtor's Objection on November 3, 2010 and scheduled an evidentiary hearing for December 3, 2010. On November 30, 2010, the Debtor, with the assent of the Trust, moved for a continuance of the evidentiary hearing and the deadline for filing the Joint Pretrial Memorandum. The Court granted the Motion and rescheduled the evidentiary hearing for February 9, 2011. The Court also extended the deadline to file the Joint Pretrial Memorandum until January 10, 2011.

On December 29, 2010, the Court *sua sponte* appointed a Chapter 11 Trustee because the Debtor and his counsel failed to appear at a hearing on the Debtor's continued use of cash collateral and because counsel to the United States trustee represented that the Debtor had failed to file required operating reports and updated financial information. The United States trustee appointed Mark G. DeGiacomo as the Chapter 11 Trustee.

Shortly after his appointment, the Chapter 11 Trustee moved to convert the Debtor's Chapter 11 case to a case under Chapter 7. On January 12, 2011, two days after the Trust filed a Pretrial Memorandum, the Court converted the Debtor's Chapter 11 case to a case

---

[2] The Debtor listed unsecured debt of $3,506.99 on an amended Schedule F-Creditors Holding Unsecured Nonpriority Claims, which he filed on October 27, 2010 after the conversion of his case to Chapter 7. The debt ceiling for unsecured debt in Chapter 13 is $360,475. The Court presumes that the Debtor was including the amount of the Trust's potential deficiency claim under 11 U.S.C. § 506(b) in calculating his unsecured debt when he asserted that his unsecured debt exceeded the limit set forth in § 109(e).

under Chapter 7. The United States trustee appointed Mark G. DeGiacomo as the Chapter 7 Trustee. Additionally, the Court canceled the February 9, 2011 evidentiary hearing and, in lieu of the evidentiary hearing, scheduled a status conference for that time.

On January 19, 2011, the Trustee filed a "Notice of Intent to Abandon Assets of the Bankruptcy Estate (16 Cannell Place, Everett, Massachusetts and Cause of Action)." According to the Trustee, the Debtor described the cause of action as a "Predatory lending and TILA violations claims against mortgagee (HomeQ Servicing) and assignees." Because no objections to the abandonment were filed, the abandonment was effective February 3, 2011. *See* Fed. R. Bankr. P. 6007(a). Despite the filing of a Notice of Intent to Abandon, the Debtor, on February 2, 2011, filed a Motion to Amend Schedules C and J and Amended Schedules C and F. The Debtor again claimed the federal exemptions with respect to the Property and a cause of action against "HomeQ Servicing and assigns."

On February 8, 2011, the Debtor filed a Pre-Trial Memorandum. The Court conducted a status conference on February 9, 2011 and directed the parties to file a Joint Stipulation of Facts by February 18, 2011, following which the Court would determine whether a further hearing should be scheduled. On February 17, 2011, the Trustee filed a Report of No Distribution.

The parties agreed that there are no facts in dispute and that the sole issues pertinent to the Trust's Motion for Relief from the Automatic Stay are the Trust's standing, which depends upon the validity of a number of mortgage assignments, and whether it has met its burden under 11 U.S.C. § 362(d). In this regard, the Trust alleged that the Debtor had

failed to make 35 monthly mortgage payments and that the amount of the outstanding mortgage debt, $731,581.35, exceeded the value of the Property, i.e., approximately $225,000 based upon a broker's price opinion dated May 27, 2010, by over $500,000. The Debtor also ascribed a value to the Property of $225,000 on Schedule A.

The parties complied with the Court's February 9, 2011 order and filed a Joint Stipulation of Facts. Those facts establish the following four assignments:

### RECORDED DOCUMENTS AT THE MIDDLESEX COUNTY REGISTRY OF DEEDS

A Mortgage executed, acknowledged and delivered by **Edson Vicente** *to* **MERS as Nominee for EquiFirst Corporation** dated March 16, 2007 and recorded on March 19, 2007 at bk 49142 pg 304;[3]

An Assignment of Mortgage from **Sutton Funding LLC** *to* **FCDB 8020 REO LLC** – dated December 24, 2008 and recorded on January 9, 2009 at bk 52063 pg 414. Date of Transfer: December 24, 2008

An Assignment of Mortgage from **MERS as Nominee for EquiFirst Corporation** *to* **Barclays Bank PLC** – dated February 6, 2009 and recorded on February 12, 2009 at bk 52226 pg 87. Date of Transfer: May, 26, 2008.

An Assignment of Mortgage from **Barclays Bank PLC** *to* **Sutton Funding LLC** – dated February 6, 2009 and recorded on February 9, 2009 at bk 52261 pg 350. Date of Transfer: June 1, 2008.

An Assignment of Mortgage from **Sutton Funding LLC** *to* **FCDB SNPWL Trust** – dated December 7, 2009 and recorded on December 24, 2009 at bk 54050 pg 484. Date of Transfer: December 7, 2009.

---

[3] The Debtor executed an Adjustable Rate Note on the same day in favor of EquiFirst Corporation in the sum of $540,000.

**III. DISCUSSION**

    A. <u>Applicable Law</u>

Section 362(c) provides, in pertinent part, the following:

(c) Except as provided in subsection (d), (e), (f), and (h) of this section -

> (1) the stay of an act *against property of the estate* under subsection (a) of this section continues until such property is no longer property of the estate; [and]
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of-
>
>> (A) the time the case is closed;
>> (B) the time the case is dismissed; or
>> (C) if the case is a case under chapter 7 of this title concerning an individual . . ., the time a discharge is granted or denied[.]

11 U.S.C. § 362 (emphasis supplied). Section 554(a) of the Bankruptcy Code provides in relevant part that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Rule 6007 implements section 554(a). If a party in interest fails to object to a proposed abandonment within 14 days of the mailing of the notice, the property is abandoned to the debtor.

    When the Debtor filed his Chapter 13 petition, pursuant to 11 U.S.C. § 541(a), the Property became property of the estate. Once abandoned, on February 2, 2011, the Property was no longer property of the estate. Because the Property is no longer property of the estate, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay imposed against the

Debtor's Property by section 362(a)(2) and section 362(a)(3) terminated on February 3, 2011. The stay imposed by section 362(a)(5) and section 362(a)(6), however, continues to apply to any act to create, perfect or enforce a lien against "property of the debtor" or "to any act to collect, assess, or recover a claim against the debtor" until the case is dismissed or closed, or discharge is granted or denied. *See* In re Adams, 212 B.R. 703, 710 (Bankr. D. Mass. 1997) (citing Gassaway v. Fed. Land Bank of New Orleans (In re Gassaway), 28 B.R. 842, 846 (Bankr. N.D. Miss. 1983) ("the abandonment of the real estate by the trustee removes such realty from the bankruptcy estate, but upon removal from the bankruptcy estate it continues as property of the debtor plaintiff, and the stay continues in effect until the occurrence of events mentioned in § 362(c)(2)")). Accordingly, the Trust's Motion for Relief from the Automatic Stay is not moot.

To prevail on its Motion for Relief from the Automatic Stay, the Trust must establish that it has standing to seek relief from stay, *see* In re Hayes, 393 B.R. 259, 266 (Bankr. D. Mass. 2008) (citing In re Maisel, 378 B.R. 19, 21 (Bankr. D. Mass.2007) ("[t]he plain language of section 362 of the Bankruptcy Code requires that one be a 'party in interest' to seek relief from stay"), and that it has satisfied the provisions of either 11 U.S.C. § 362(d)(1) or (d)(2).[4]

B. Analysis

The parties disagree as to the effect of the Assignment from Sutton Funding LLC to

---

[4] Because the Trustee has abandoned the Property, the usual formulation set forth by the United States Court of Appeals for the First Circuit in Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33 (1st Cir.1994), namely that the movant has established a "colorable claim to property of the estate," is inapplicable.

FCDB 8020 REO LLC. That assignment is dated December 24, 2008, and it was recorded on January 9, 2009. It was executed on December 24, 2008 by an Assistant Secretary at Sutton Funding LLC, whose signature was notarized that same day, and is outside the chain of title. The Debtor, however, contends that the assignment from Sutton Funding LLC to FCDB 8020 REO LLC is valid. The Trust contends that the assignment from Sutton Funding LLC to FCDB 8020 REO LLC is ineffective and invalid. The Court agrees that the assignment is ineffective.

> Under Massachusetts law,
>
> Notwithstanding any law to the contrary, a[n] . . . assignment of mortgage . . . if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, . . . or other similar office, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity . . . .

Mass. Gen. Laws ch. 183 § 54B. All the assignments referenced by the parties were executed by individuals identified as "Assistant Secretary." All were notarized and all were recorded. As the court noted in In re Samuels, 415 B.R. 8 (Bankr. D. Mass. 2009),

> A mortgage is an interest in real property, and the statute of frauds accordingly requires that an assignment of a mortgage be in writing. Warden v. Adams, 15 Mass. 233 (1818) ("By force of our statutes regulating the transfer of real estates and for preventing frauds, no interest passes by a mere delivery of a mortgage deed, without an assignment in writing and by deed.").

415 B.R. at 20.

The assignment from MERS to Barclays Bank PLC and the assignment from Barclays

Bank PLC to Sutton Funding LLC each bear two dates, in addition to the dates of recordation. The MERS assignment to Barclays Bank PLC sets forth a "Date of Transfer" of May 26, 2008, while the Barclays Bank PLC assignment to Sutton Funding LLC sets forth a "Date of Transfer" of June 1, 2008. These two assignments, however, were not executed, on May 26, 2008 or June 1, 2008, respectively and, therefore, were not effective to convey an interest in the Debtor's Property until such time as they were executed. Both assignments were executed on February 6, 2009 and recorded on February 12, 2009 and February 19, 2009, respectively. Sutton Funding LLC's assignment to the Trust occurred on December 7, 2009, ten months after the MERS to Barclays Bank PLC assignment and the Barclays Bank PLC assignment to Sutton Funding LLC.

The Debtor's reliance on the Sutton Funding LLC assignment to FCDB 8020 REO LLC is misplaced. Although a Date of Transfer of December 24, 2008 is set forth on the assignment, that assignment's validity is predicated upon unexecuted assignments with dates of transfer of May 26, 2008 and June 1, 2008. "Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing *signed by the grantor*." U.S. Bank Nat'l Assoc. v. Ibanez, 458 Mass. 637, 649 (Mass. 2011) (citing, inter alia, Mass. Gen. Laws ch. 183, § 3).[5] Accordingly, the assignment by MERS to

---

[5] Section 3 of chapter 183 provides: "An estate or interest in land created without an instrument in writing *signed by the grantor* or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law." Mass. Gen. Laws ch. 183, § 3 (emphasis supplied).

Barclays Bank PLC and the Barclays Bank PLC assignment to Sutton Funding LLC did not transfer any rights to the mortgage on the Debtor's Property until they were executed on February 6, 2009 *after* the December 24, 2008 assignment by Sutton Funding LLC to FCDB 8020 REO LLC. Thus, Sutton Funding LLC conveyed nothing to FCDB 8020 REO LLC, and that assignment is outside the chain of valid assignments.

The December 7, 2009 assignment from Sutton Funding LLC to the Trust, however, was a valid assignment because on that date Sutton Funding LLC had an interest in the Debtor's mortgage which had existed since February 6, 2009.

In summary, the Debtor granted a mortgage to MERS on March 16, 2007; MERS, as nominee for EquiFirst Corporation, the holder of the Adjustable Rate Note, assigned the mortgage to Barclays Bank PLC on February 6, 2009; Barclays Bank PLC assigned the mortgage to Sutton Funding LLC on February 6, 2009. Sutton Funding LLC then assigned the mortgage to the Trust on December 7, 2009 and recorded that assignment on December 24, 2009. Because Sutton Funding LLC did not hold the mortgage by assignment on December 24, 2008, its purported assignment to FCDB 8020 REO LLC does not deprive the Trust of standing to seek relief from stay as that assignment was a legal nullity.

Upon consideration of this Court's determination that the Trust has standing to seek relief from the automatic stay; the unrebutted and undisputed allegation by the Trust of "cause" for relief from stay under 11 U.S.C. § 362(d)(1) due to the 35 missed monthly mortgage payments; and the unrebutted and undisputed allegations that there is no equity

in the Property and that the Property is unnecessary for a reorganization as the Debtor's case has been converted from Chapter 11 to a Chapter 7 case, *see* 11 U.S.C. § 362(d)(2), the Court finds that the Trust has established grounds for relief from the automatic stay.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trust's Motion for Relief from the Automatic Stay.

By the Court,

*[signature: Joan N. Feeney]*

By the Court,
Joan N. Feeney
United States Bankruptcy Judge

Dated: March 28, 2011